COMMONWEALTH *vs.* JOSE LUIS RENDON-ALVAREZ.

No. 98-P-412.

Essex. June 10, 1999. - October 22, 1999.

Present: ARMSTRONG, KASS, & PORADA, JJ.

*Controlled Substances. Constitutional Law,* Admissions and confessions. *Evidence,* Admissions and confessions. *Practice, Criminal,* Admissions and confessions, Argument by prosecutor.

At a criminal trial, the judge correctly ruled that the defendant had been given Miranda warnings properly after his arrest. [141]

At the trial of an indictment, the judge erred in admitting over objection testimony that the defendant had, after his arrest and after receiving Miranda warnings, refused to continue to answer a police officer's questions, and, where the prosecutor improperly argued the defendant's silence as reflecting on the credibility of his testimony at trial, a new trial was required. [141-142]

INDICTMENT found and returned in the Superior Court Department on February 1, 1995.

A motion to suppress was heard by *Howard J. Whitehead,* J., and the case was tried before *Barbara J. Rouse,* J.

*Peter M. Onek,* Committee for Public Counsel Services, for the defendant.

*Marcia H. Slingerland,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. The defendant was convicted of trafficking in cocaine in excess of 200 grams based on evidence that he drove, and was the sole occupant of, a car with slightly over a kilo of the drug, wrapped in brick form, hidden under the front seat. State Trooper O'Neil had stopped the car for a traffic violation and noticed the distinctive package protruding from beneath the seat. The trooper read the defendant the Miranda warnings from a card he carried; then, seeing that the defendant spoke English with difficulty, he had the defendant read the back side of the card, which listed the Miranda warnings in Spanish. Trooper

Pina, who spoke Spanish, read the defendant the same warnings from a card at the barracks. Questioning produced little information of consequence and was terminated when the defendant, in response to repeated questions trying to ascertain where the defendant had come from, refused to answer questions further, claiming to be confused. At trial, the defendant testified that he was a mechanic and was in the process of returning the car to the owner when stopped by Trooper O'Neil. He claimed to have known nothing of the kilo of cocaine under the seat (which he had adjusted forward, being considerably shorter than the owner, leaving the cocaine visible).

The motion judge's conclusion that the defendant was properly warned under Miranda was not in error. Trooper Pina's inability on the witness stand to recall all the warnings was of no consequence where the defendant had been given the card to read the warnings in Spanish and, later, the warnings had been read to the defendant from such a card. See *Commonwealth* v. *Ayala,* 29 Mass. App. Ct. 592, 595-596 (1990); *Commonwealth* v. *Mitchell,* 47 Mass. App. Ct. 178, 181 (1999). As those decisions advise, better practice called for putting the card in evidence, see *Commonwealth* v. *Lewis,* 374 Mass. 203, 205 (1978), but the failure to do this was not fatal. At present, there is no rule requiring that the warnings and statements thereafter be recorded electronically. *Commonwealth* v. *Fryar,* 414 Mass. 732, 742 n.8 (1993). *Commonwealth* v. *Diaz,* 422 Mass. 269, 272-273 (1996). *Commonwealth* v. *Fernandes,* 427 Mass. 90, 98 (1998).

It was error, however, for the trial judge, over objection, to allow Trooper Pina to testify that the defendant had refused to go on answering the trooper's questions, asserting confusion. *Doyle* v. *Ohio,* 426 U.S. 610, 617-618 (1976). See *Commonwealth* v. *Cobb,* 374 Mass. 514, 518-521 (1978); *Commonwealth* v. *Waite,* 422 Mass. 792, 797 (1996); *Commonwealth* v. *Somers,* 44 Mass. App. Ct. 920, 923 (1998). See also *Commonwealth* v. *Nawn,* 394 Mass. 1, 5 (1985). Unlike *Commonwealth* v. *Habarek,* 402 Mass. 105, 110 (1988), in which such testimony was required to put an abruptly ended conversation in context, or *Commonwealth* v. *Waite,* 422 Mass. at 798, where such testimony was necessary to rebut a defense attempt to portray the defendant's silence as indicative of improper interrogation techniques of the police, here the testimony could have been ended smoothly with Trooper Pina's describing the

Commonwealth *v.* Rendón-Alvarez.

last question asked of and answered by the defendant. There was here no justification for entering the forbidden territory.

It has been said that "[t]he nature of a *Doyle* error is so egregious that reversal is the norm, not the exception." *Commonwealth* v. *Mahdi*, 388 Mass. 679, 698 (1983). Despite that norm, we note that, where the defendant asserted a superficially plausible reason for terminating the questioning — his confusion — and the testimony did not dwell on the refusal, there would be some justification for treating the error as harmless in the context of the whole trial.

The prosecutor, however, did not leave well enough alone. Instead of shying from the area she knew was sensitive, she elected in closing argument to highlight the defendant's refusal to cooperate with the interrogation. "[Trooper Pina] asks where the defendant was coming from, but the defendant won't answer him . . . . Now, after several of these routine questions, Where are you coming from? Where are you going? What are your parents' names? What is your date of birth? [T]he defendant says[,] I'm confused. Let's stop." The prosecutor went on to question the validity of the defendant's asserted confusion, reminding the jurors that the conversation between Trooper Pina and the defendant was in Spanish, the defendant's native tongue. Unmistakably, the prosecutor was trying in this line of argument to *use* against the defendant his postarrest, postwarning silence. See *Commonwealth* v. *Waite*, 422 Mass. at 798. In effect, the prosecutor by this line of argument was emphasizing for the jury the plausible but forbidden thought that, if the defendant's story at trial were true, why didn't he simply tell it to the police? This use of the defendant's silence " 'struck at the heart of' the defendant's [story at trial]." *Commonwealth* v. *Egardo*, 426 Mass. 48, 53 (1997), quoting from *Commonwealth* v. *Egardo*, 42 Mass. App. Ct. 41, 44 (1997). We cannot properly conclude that the error was harmless. The defendant is entitled to a new trial.

*Judgment reversed.*

*Verdict set aside.*